# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| ARLEEN P. REVIERE | CIVIL ACTION NO. 06-1183 |
| VS. | JUDGE MELANÇON |
| COMMISSIONER OF SOCIAL SECURITY | MAGISTRATE JUDGE METHVIN |

## REPORT AND RECOMMENDATION

Before the court is an appeal of the Commissioner's unfavorable disability finding. Considering the administrative record, the briefs of the parties and the applicable law, it is recommended that the Commissioner's decision be **AFFIRMED**.

### *Background*

Born on May 18, 1957, Arleen P. Reviere ("Reviere") is a 50-year old claimant with a high school education and two years of college. (Tr. 16). She has no vocationally relevant past work experience. (Id.).

On April 7, 2004, Reviere filed an application for supplemental security income payments, alleging disability as of April 1, 2004 due to back pain, anxiety, and right-side body pain. Her application was initially denied, and an administrative hearing was held on August 3, 2005. In an opinion dated August 25, 2005, an ALJ found that Reviere retains the residual functional capacity to perform a full range of light work. (Tr. 22). The Appeals Council denied review, (Tr. 5-7), making the ALJ's decision the final decision of the Commissioner from which Reviere now appeals.

2

### Assignment of Errors

Reviere raises two errors on appeal: (1) The ALJ erred in concluding that Reviere's anxiety causes only mild limitations; and (2) the ALJ erred in assessing Reviere's residual functional capacity, which led to an erroneous finding that Reviere's back condition fails to prevent her from performing other relevant work.[1]

### Standard of Review

The court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards.  Carey v. Apfel, 230 F.3d 131, 136 (5th Cir. 2000); Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992); Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Carey, 230 F.3d at 136; Anthony, 954 F.2d at 292; Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991).  The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion.  Carey, 230 F.3d at 136; Johnson v. Bowen , 864 F.2d 340, 343 (5th Cir.1988).  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Johnson, 864 F.2d at 343.

---

[1] Reviere actually asserts five errors on appeal.  Because three of them relate to the RFC assessment made by the ALJ, these errors are combined for purposes of this ruling.  The three RFC-related errors alleged are: (1) The ALJ erred in failing to consider the combination of Reviere's impairments in concluding that she retains the RFC for a full range of motion; (4) the ALJ erred in concluding that Reviere can perform the full range of light work; and (5) the ALJ erred in concluding that "any functional incapacity of the claimant would not exclude the claimant from jobs which exist in the national economy."

3

*Analysis*

In determining whether a claimant is capable of performing substantial gainful activity, the Secretary uses a five-step sequential procedure set forth in 20 C.F.R. §404.1520(b)-(f) (1992):

1. If a person is engaged in substantial gainful activity, he will not be found disabled regardless of the medical findings.

2. A person who does not have a "severe impairment" will not be found to be disabled.

3. A person who meets the criteria in the list of impairments in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.

4. If a person can still perform his past work, he is not disabled.

5. If a person's impairment prevents him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

In the instant case, the ALJ determined at Step 5 that Reviere suffers from the severe impairments of back pain and anxiety, but that she is not disabled because she retains the residual functional capacity to perform a full range of light work.  (Tr. 18-19, 21).

After careful consideration of the record, the undersigned concludes that the ALJ's decision is supported by substantial evidence.

**1.   Medical History**

Reviere complains of back pain that started in 1999 when she fell backwards off a stool. (Tr. 94).  An April 16, 1999 CT scan of Reviere's thoracic spine was normal, while a CT of the lumbar spine showed left lateral disc herniation extending into the left lateral recess at L4-5.  (Tr. 151).  It is not clear whether these tests were taken immediately after the accident, although it

4

appears they were.  The only medical evidence in the record pre-dating the fall is an April 1997 lumbar spine x-ray, which showed normal results.  (Tr. 120).

It appears that Reviere did not seek further treatment for back pain until 2003.  However, Reviere only mentioned back pain once in the course of ten visits with Dr. Charles Dugal at a medical clinic between April 22, 2003 and December 2, 2004 (Tr. 79-93).

On January 6, 2003, Reviere had a CT scan of the lumbar spine, which showed mild to moderate central canal spinal stenosis at the L4-5 segment.  The notes state that an MRI would provide more accurate results.  (Tr. 122).  On January 13, 2003, Reviere had a normal MRI of the lumbar spine.  (Tr. 121).

Dr. Dugal referred Reviere to Dr. George Raymond Williams, an orthopedic surgeon, who examined Reviere on March 5, 2004.  At that time, Dr. Williams reported that Reviere had normal motor strength, an equal sensory exam, normal reflexes, negative straight leg raise tests, and negative pain with internal hip rotation.  (Tr. 100).  Dr. Williams ordered an MRI of Reviere's lumbar spine, which was conducted on March 8, 2004.  The results showed mild multi-level degenerative changes, with no evidence of disc herniation and only minimal posterior annular bulging.  (Tr. 97).  On March 12, 2004, Dr. Williams interpreted the results as showing that "all discs have good height, good alignment, and good hydration," with "no evidence of dessication or protrusion to the canal," and "no neural foraminal stenosis."  (Tr. 98).  Dr. Williams stated that "this patient categorically does not require any type of surgical intervention."  Dr. Williams prescribed anti-inflammatory medications and recommended that Reviere "continue her physical therapy and exercises and maintain her active lifestyle."  (Id.).

5

On June 5, 2004, Reviere was examined by Dr. Ross Klingsberg, an internist, at the request of Disability Determinations Services.  Dr. Klingsberg reported that Reviere walked well, was able to get on and off the exam table with no problems, had normal grip strength, and normal fine and gross motor manipulation, with no atrophy.  (Tr. 103-04).  Dr. Klingsberg further reported that Reviere had normal range of motion in all joints, could bend with no problems, had a negative straight leg test, and could walk on her heels and toes and squat.  (Tr. 104).  Dr. Klingsberg diagnosed Reviere with low back pain without evidence of nerve involvement and anxiety without evidence of mental instability or suicidal ideations, noting:

> The patient has preserved capacity to sit, to stand, to walk, to lift, to hear, to speak and to handle objects.  She does in fact have a recent acquisition of two college degrees and has no evidence of intellectual impairment.

(Tr. 104-05).  In a Psychiatric Review Technique, a state examiner assessed Reviere with only mild limitations in the areas of "activities of daily living," "maintaining social functioning," and "maintaining concentration, persistence and pace," with no episodes of decompensation.[1]  (Tr. 116).

A March 16, 2005 MRI of the lumbar spine was "essentially unremarkable," with no focal disc protrusion or herniation.  (Tr. 150).

---

[1] Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two). Episodes of decompensation may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode.
20 CFR Pt. 404, Subpt. P, App. 1

6

Medical records from Heal One Medical Clinic in Slidell, Louisiana dated January 10, 2005 to July 25, 2005 show that Reviere was treated by Dr. A. Dennis for complaints of back pain.  (Tr. 130-49).  In undated treatment notes, Dr. Dennis reports that Reviere's pain starts in her neck, goes all the way down to her toes, and is constant.  (Tr. 143).  Dr. Dennis diagnosed Reviere with chronic pain and being overweight.  (Id.).  On July 24, 2005, Dr. Dennis reported that Reviere complained about pain in her legs, but that heating pads worked.  Reviere also complained of hot flashes.  (Tr. 141).

On October 3, 2005, Dr. Dennis wrote a letter wherein he states that his treatment of Reviere has been conservative, and that it consists of pain management, including home exercise. Nevertheless, Dr. Dennis expressed his concern that in 1999, Reviere had an MRI that showed a herniated disc at L4-5.  Dr. Dennis stated:

> [Reviere] is incapable of lifting more than 10 to 15 pounds, nor should she engage in any activity requiring her to carry any object in excess of that weight.  Based upon my findings, she is incapable of engaging in any activity that would require walking, standing, or sitting for in excess of 1 hour, and I believe that she would encounter difficulty in any type of activity requiring her to push, pull, or otherwise operate any equipment or objects with either her arms or legs.
>
> Based upon my examination and treatment of the plaintiff, I am further of the opinion that because of her anxiety and the attendant non-exertion difficulties she has encountered, she is incapable of engaging in any activity that would require her to interact with others or possess the necessary concentration skills or patience to perform such activities.  Her limitations are, unfortunately, aggravated by the necessity that she take medication which had the effect of causing lack of ordinary motor skills, including the valium noted above, as well as soma, a muscle relaxer prescribed in order to treat the muscular component of her injuries.

(Tr. 139).  The same report states that Reviere takes Xanax for her anxiety.  (Id.).

7

1.    **Mental Impairments**

Reviere argues that the ALJ erred in concluding that her anxiety causes only mild functional limitations.  The ALJ concluded that, although Reviere's anxiety is severe, it does not cause more than mild limitations in the areas of "activities of daily living," "social functioning," or "concentration, persistence, and pace," and that she has demonstrated no episodes of decompensation.  (Tr. 18).  Reviere contends that more weight should have been given to the opinion of Dr. Dennis, who reported that Reviere "is incapable of engaging in any activity that would require her to interact with others or possess the necessary concentration skills or patience to perform such activities."  (Tr. 139)

The record shows that the ALJ properly analyzed Reviere's anxiety under the correct procedure for mental impairments.  When a mental disability claim is made, the Commissioner utilizes a corollary sequential procedure for determining the merits of the claim.  Essentially, this procedure substitutes specialized rules at Step 2 for determining whether a mental impairment is severe, and also provides detailed guidelines for making the Step 3 determination as to whether the mental impairment meets or exceeds the Listings.  The Regulations require the ALJ "to identify specifically the claimant's mental impairments, rate the degree of functional limitation resulting from each in four broad functional areas, and determine the severity of each impairment."  Furthermore, under §404.1520a(e), "the ALJ must document his application of this technique to the claimant's mental impairments."  Satterwhite v. Barnhart, 44 Fed.Appx. 652 (5th Cir. 2002) (unpublished).[2]

---

[2] For a succinct summary of the current law, see Serrano-Diaz v. Barnhart, 2004 WL 2431693, *6 (E.D.Pa. 2004):

    1.      The ALJ must first evaluate the claimant's pertinent symptoms, signs, and laboratory findings to

8

Furthermore, the ALJ's findings are consistent with the medical evidence in the record. Dr. Klingsberg diagnosed Reviere with anxiety without evidence of mental instability or suicidal ideations, (Tr. 104-05), and a state examiner assessed Reviere with only mild limitations in the areas of "activities of daily living," "maintaining social functioning," and "maintaining concentration, persistence and pace," with no episodes of decompensation.  (Tr. 116).  These opinions directly contradict the opinion of Dr. Dennis.

It is well-settled that the opinion of a treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability.  Newton v. Apfel, 209 F.3d 448, 455-56 (5th Cir. 2000), citing Leggett v. Chater, 67 F.3d 558, 566 (5th Cir.1995); Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir.1994), cert. denied, 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995).  A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence."  Martinez v. Chater, 64 F.3d 172, 176 (5th Cir.1995), citing 20 C.F.R. §404.1527(d)(2)).  The ALJ may also reject a treating physician's

---

determine whether he or she has a medically determinable mental impairment.

2.    If a medically determinable mental impairment is found, the ALJ must then rate the degree of functional limitation resulting from the impairment in four areas: (1) activities of daily living; (2) social functioning; (3) persistence or pace of concentration; and (4) episodes of decompensation. See C.F.R. §404.1520a(c)(3).

3.    When a severe mental impairment is found, the Commissioner determines whether the impairment meets or exceeds the requirements of the Listings.

4.    When the severe mental impairment does not meet Listing requirements, the Commissioner then assesses the claimant's residual functional capacity.

The procedure states that if the degree of limitation in the first three functional areas is "none" or "mild," and "none" in the fourth area, the ALJ will generally conclude that the impairment is not severe, *unless the evidence otherwise indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities.* Serrano-Diaz v. Barnhart, 2004 WL 2431693, *6 (E.D.Pa. 2004), citing 20 C.F.R. §404.1520a(d)(1).

9

opinion if he finds, with support in the record, that the physician is not credible and is "leaning over backwards to support the application for disability benefits." <u>Scott v. Heckler</u>, 770 F.2d 482, 485 (5th Cir. 1985).

In the instant case, there is simply no evidence in the record supporting a finding that Reviere experiences more than mild limitations in the appropriate areas of functioning.  No doctor other than Dr. Dennis has opined that Reviere's anxiety is disabling.  Furthermore, there is no evidence in the record that Reviere has ever sought treatment for psychiatric problems.  Rather, the record shows that Dr. Dennis simply prescribes Xanax for Reviere to help her control her anxiety.  This is not sufficient evidence to support a finding that Reviere's anxiety is disabling.  For the foregoing reasons, this claim is without merit.

**2.**     **<u>The ALJ's Residual Functional Capacity Assessment</u>**

Reviere also contends that the ALJ erred in assessing her residual functional capacity, leading to an erroneous conclusion that her back pain fails to prevent her from performing other relevant work.  The ALJ concluded that Reviere is "incapable of lifting [or carrying] more than 10 to 15 pounds;" "is incapable of engaging in any activity that would require walking, standing, or sitting for in excess of one hour," and "would encounter difficulty in any type of activity requiring her to push, pull, or otherwise operate any equipment or objects with either her arms or legs." (Tr. 139).

The undersigned concludes that Dr. Dennis's opinion is wholly unsupported by any diagnostic testing in the record.  All of the MRIs conducted on Reviere's lumbar spine – including MRIs conducted on January 13, 2003, March 8, 2004, and March 16, 2005 – have been essentially normal.  The only abnormal diagnostic test that Reviere presented is the 1999 CT scan

which showed a herniated disc.  Since that time, all diagnostic testing of Reviere's lumbar spine has yielded normal results.

Furthermore, Dr. Dennis's opinion is not consistent with the reports of Dr. Williams, who noted on March 5, 2004 that Reviere had normal motor strength, an equal sensory exam, normal reflexes, negative straight leg raise tests, and negative pain with internal hip rotation.  (Tr. 100).  On March 12, 2004, Dr. Williams interpreted the results as showing that "all discs have good height, good alignment, and good hydration," with "no evidence of dessication or protrusion to the canal," and "no neural foraminal stenosis."  (Tr. 98).  Dr. Williams stated that "this patient categorically does not require any type of surgical intervention."

The undersigned also notes that Dr. Dennis's medical reports contain contradictory information and, for that reason alone, his opinions are entitled to dubious weight.  For instance, in his October 3, 2005 report, Dr. Dennis states that the medications that Reviere takes cause her to have "a lack of ordinary motor skills."  (Tr. 140).  However, in his treatment notes dated July 6, 2005, July 25, 2005, as well as in an undated note, Dr. Dennis reported that Reviere has no side effects from her medication.  (Tr. 141-43).

Given that there is no diagnostic evidence in the record supporting Dr. Dennis's opinion, and that Dr. Dennis's own medical records contain contradictory information, the undersigned concludes that the ALJ properly discounted the weight of Dr. Dennis's opinions.

**3.     Pain as a Disabling Condition By Itself**

The undersigned recognizes that pain can be a disabling condition by itself.  The law of the Fifth Circuit is that pain reaches the level of a disabling complaint when such pain is constant, unremitting, and wholly unresponsive to therapeutic treatment.  Francois v.

11

Commissioner of Social Sec., 2001 WL 322194, *11 (E.D. La. 2001), citing Falco v. Shalala, 27

F.3d 160, 163 (5th Cir. 1994).  As to a determination of whether a claimant's pain is disabling, the

first consideration is whether the objective medical evidence shows the existence of an

impairment which could reasonably be expected to produce the pain alleged.  Francois, 2001 WL

322194, at *11.  Generally, medical factors that indicate disabling pain include limitation of

range of motion, muscle atrophy, strength deficits, sensory deficits, reflex deficits, weight loss or

impairment of general nutrition, noticeable swelling, and muscle spasm.  Id.  Other "medical

signs" that support a finding that a claimant is disabled include a physician's diagnosis based

upon history, symptoms and response to medication.

When there are conflicts between subjective complaints of pain and objective evidence,

the ALJ is to evaluate the claimant's credibility.  Carrier v. Sullivan, 944 F.2d 243, 247 (5th Cir.

1991).  "How much pain is disabling is a question for the ALJ since the ALJ has primary

responsibility for resolving conflicts in the evidence."  Carrier, 944 F.2d at 246.  This court may

not reweigh the evidence.  Id., citing Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir.1990).

In the instant case, the undersigned concludes that substantial evidence supports the

ALJ's finding.  First, the record shows that Reviere has been treated conservatively throughout

the relevant time period, which suggests that her pain is not as severe as she alleges.  Second, the

record is devoid of the kind of evidence that demonstrates disabling pain.  In addition to the lack

of diagnostic findings to substantiate Reviere's complaints of pain, the examination records of

Dr. Klingsberg show that Reviere has no trouble walking, was able to get on and off the exam

table with no problems, has normal grip strength, and normal fine and gross motor manipulation,

no atrophy, normal range of motion in all joints, no problems bending, a negative straight leg

test, and can walk on her heels and toes and squat.  (Tr. 103-04).  The foregoing medical factors do not demonstrate disabling pain.

Furthermore, the record shows that Reviere's lifestyle is not consistent with that of one who is experiencing constant and wholly unremitting pain.  In her Activities of Daily Living Form, Reviere reported that she does the laundry; dusts; wipes down her cabinets when her wrists don't hurt; shops with her from her children; reads; goes to church every Sunday; and drives a car.  (Tr. 62065).  Such activities are not indicative of disabling pain.  (Tr. 62-65).

For the foregoing reasons, the undersigned concludes that substantial evidence supports the ALJ's residual functional capacity assessment and his finding that Reviere can engage in a full range of light work.

### *Conclusion*

Considering the foregoing, it is recommended that the ALJ's decision be **AFFIRMED.**

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have ten (10) days from receipt of this Report and Recommendation to file specific, written objections with the Clerk of Court.  Counsel are directed to furnish a courtesy copy of any objections or responses to the district judge at the time of filing.

Any judgment entered herewith will be a "final judgment" for purposes of the Equal Access to Justice Act (EAJA).  See <u>Richard v. Sullivan</u>, 955 F.2d 354 (5th Cir. 1992) and <u>Shalala v. Schaefer</u>, 509 U.S. 292 (1993).

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10)**

13

days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P.

6(b), shall bar an aggrieved party from attacking either the factual findings or the legal

conclusions accepted by the District Court, except upon grounds of plain error.  See

<u>Douglass v. United Services Automobile Association</u>, 79 F.3d 1415 (5th Cir.  1996).

     Signed at Lafayette, Louisiana, on August 13, 2007.

 

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)